IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN R. GOLDEN,

        Plaintiff,

v.                                            Case No. 25-cv-2179-JWB

HALLCON CORPORATION,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on two post-judgment motions by Plaintiff. (Docs. 26, 28, 29.) In these motions, Plaintiff asks the court to provide him relief from judgment, reopen this matter, and grant Plaintiff's motion to proceed in forma pauperis ("IFP").[1] These motions are fully briefed and ripe for decision. (Docs. 25, 32, 33.) Plaintiff's motions are denied for the reasons stated herein.

**I.    Facts**

The relationship between Plaintiff and Defendant Hallcon Corporation began on January 21, 2019, when Plaintiff was hired by Defendant to be a "qualified driver." (Doc. 1 at 6.) According to Defendant, Plaintiff's "job [was] to provide transportation services for client employees from one railroad site to another." (Doc. 13-2 at 3.) Plaintiff claims that he suffers from ADHD and other related mental conditions which require reasonable accommodations. (Doc. 1 at 5–6.) During his employment, Plaintiff alleges that he was instructed to operate vehicles

---

[1] There are other post-judgment motions filed by the Plaintiff in this case, but Plaintiff appealed to the Tenth Circuit before the court could rule on them. (Doc. 37.) Appealing to the Tenth Circuit removes a district court's jurisdiction to rule on the pending motions. *See Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990). However, in this case, the Tenth Circuit abated the appeal and specifically directed this court to rule on the motions to reopen the case and for relief from judgment. (Doc. 40.)

1

in sub-optimal condition and forced to operate in unsafe conditions, even after Plaintiff attempted to report the deterioration of the vehicles to Defendant. (*Id*. at 8–9.) After being involved in an accident in June 2024,[2] Defendant moved Plaintiff's hours of employment in November, which Plaintiff claims is retaliation and a failure to accommodate the work hours to which he has grown accustomed. (*Id*. at 11–14.) Plaintiff also claims that he requested accommodations for his alleged disabilities in March 2024. (*Id*. at 11–12.)

On October 22, 2024, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendants failed to accommodate his mental disability. (*Id*. at 14.) In this charge, Plaintiff only alleges that Defendants did not attempt to engage in "the interactive process to find[] reasonable accommodations for [Plaintiff] to be[] able to perform the essential duties of his job." (Doc. 13-1 at 3.) Plaintiff received his right to sue letter on January 15, 2025. (Doc. 1-1.)

On April 7, 2025, Plaintiff filed the present case, raising claims of discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act ("ADA") along with state law claims of negligence and gross negligence. (Doc. 1 at 15–17.) On the same day he filed his complaint, Plaintiff filed a motion to proceed IFP. (Doc. 4.) In this motion, he attests to making $1,050 net income bi-weekly, with monthly household expenses of only $1,800. (*Id*.) As a result, Magistrate Judge Angel D. Mitchell issued a Report and Recommendation ("R&R") recommending Plaintiff's motion to proceed IFP be denied because Plaintiff did not establish that he was unable to pay the filing fee. (Doc. 6.) Plaintiff was advised that specific written objections

---

[2] There appears to be some uncertainty in the record as to the specific dates of this alleged accident. In his complaint, Plaintiff alleges that the accident occurred in June 2024, with him returning to work in November 2024. (Doc. 1 at 10-11.) However, in Plaintiff's EEOC charge of discrimination, he alleges that the accident took place in June 2023, with him returning to work in November 2023. (Doc. 13-1 at 3.) Although the court is inclined to think that the dates in the EEOC charge are correct given the other timelines represented to the court, the facts of the complaint control this present analysis.

were due within 14 days after being served with a copy of the R&R, and Plaintiff timely objected to the R&R. (Doc. 9.) After reviewing Plaintiff's objections to the R&R, the undersigned entered an order on July 1, 2025, which overruled Plaintiff's objections, adopted the R&R, and ordered Plaintiff to "pay the filing fee for this case within 21 days" or else face dismissal of his case without prejudice. (Doc. 16.) Although Plaintiff made several filings in this case between July 1st and July 21, 2025 (Docs. 17, 19), he did not pay the required filing fee. As a result, the court entered an order dismissing the case without prejudice and entered judgment on July 28, 2025. (Docs. 22, 23.)

After judgment was entered, Plaintiff filed numerous documents renewing his request to proceed IFP (Docs. 24, 27, 30, 31, 41) and requesting that the case be reopened or that he be provided relief from judgment (Docs. 26, 28, 29). The general argument of Plaintiff's numerous filings is that he has lost his employment with Defendants, and this fact constitutes changed circumstances for purposes of preceding IFP. Moreover, he contends that this changed circumstance exacerbated his underlying mental conditions and symptoms to the point where he missed the court's order directing him to pay the filing fee, and this distressed mental state constitutes excusable neglect and extraordinary circumstances to reopen the case. Defendants argue that reopening the case would be futile since Plaintiff's claims are now time-barred, that Plaintiff still had the ability to pay the filing fee at the time the amended IFP motion was filed, that Plaintiff waived any objection to the court's order requiring him to pay the fee, and that Plaintiff fails to meet the Rule 60(b) standards for relief from judgment.

While these motions were pending, Plaintiff took an appeal of the final judgment to the Tenth Circuit on September 24, 2025. (Doc. 37.) The Clerk of court transmitted the preliminary record on appeal, and the appeal was docketed at the Tenth Circuit that same day. (Docs. 38, 39.)

Such an appeal ordinarily divests the district court of jurisdiction to enter orders in the case. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). However, given that Rule 59(e) and Rule 60 motions were still pending in this case, the Tenth Circuit abated Plaintiff's appeal under Federal Rule of Appellate Procedure 4(a)(4) and directed this court to rule on the motion to reopen the case and the motion for relief from judgment. (Doc. 40.)

## II.     Standard

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to request reconsideration of a final judgment. "Grounds which justify alteration or amendment under Rule 59(e) include: (1) an intervening change in controlling law; (2) new evidence that was previously unavailable; or (3) a need to correct clear error or prevent manifest injustice." *Lenexa 95 Partners, LLC v. Kin, Inc.*, No. 20-2367-JWB, 2023 WL 171925, at *1 (D. Kan.) (citation omitted), *appeal dismissed*, No. 23-3025, 2023 WL 5608807 (10th Cir. Apr. 27, 2023). Rule 59(e) motions must be made within 28 days of entry of judgment and may be granted when "the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). But after entry of judgment the public "gains a strong interest in protecting the finality of judgments." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). In other words, Rule 59 motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of the judgment." *Id*. (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

Rule 60 also permits relief from a final judgment in certain circumstances, including

4

"mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); fraud[,] ... misrepresentation, or misconduct by an opposing party;" or "any other reason that justifies relief." *See Tyner v. Probasco L., P.A.*, No. 20-2632-EFM, 2022 WL 2802318, at *1 (D. Kan. July 18, 2022) (citing Fed. R. Civ. P. 60(b)). A party may not use Rule 60 to revisit the same issues already addressed. *See Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (explaining that a Rule 60(b) motion is not an appropriate vehicle to "revisit[ ] the original issues" or "to advance new arguments or supporting facts that were available but not raised at the time of the original argument"). Additionally, the court may only grant relief under Rule 60(b)(6) in extraordinary circumstances. *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 830 (10th Cir. 2022).

**III.    Analysis**

Plaintiff asks this court to reopen his case under Federal Rule of Civil Procedure 59(e) (Doc. 26) or under Rule 60(b). (Doc. 29.) Plaintiff claims his poor mental health provides excusable neglect for his failure to pay the filing fee in this case, and he asks the court to also grant his numerous amended motions to proceed IFP. In his complaint, Plaintiff alleges ADA claims for discrimination, retaliation, and failure to accommodate, in addition to state law negligence and gross negligence claims. Although Plaintiff's deteriorating mental health may present a reasonable excuse for missing the court's deadlines, the court does not need to decide whether Plaintiff's conditions rise to the level of excusable neglect or some other extraordinary circumstance which would provide relief from judgment. This is because Plaintiff's federal law claims are meritless, and reopening his case would be futile. *Johnson v. Spencer*, 950 F.3d 680, 715 (10th Cir. 2020) (holding a denial of a Rule 59 motion based on futility was "correct and sound"); *Hawg Tools,*

5

*LLC v. Newsco Int'l Energy Servs., Inc.*, 758 F. App'x 632, 640 (10th Cir. 2018) (holding futility of Plaintiff's claims was a valid basis to deny a motion to reopen a case that had been administratively closed). *See also Am. Fam. Mut. Ins. Co. v. Teamcorp, Inc.*, 835 F. Supp. 2d 1083, 1086 (D. Colo. 2011) (gathering cases on "courts [applying] the futility concept in the context of a motion to reopen a case"). The court will now address each of Plaintiff's claims on the merits to show that providing Plaintiff relief from judgment and reopening this case will be futile.

### A) ADA Retaliation Claim

To raise a claim for ADA retaliation, a Plaintiff must first "comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (citation omitted). This means that Plaintiff had to exhaust his claims with the EEOC before suing. In their motion to dismiss (which was rendered moot by the entry of judgment), Defendants contend that Plaintiff failed to include claims for retaliation in his EEOC filing. (Doc. 13.) The filing of an EEOC charge is a statutory requirement, and if a plaintiff fails to comply with it, an employer may raise failure to exhaust as an affirmative defense. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). "A plaintiff normally may not bring an ADA claim based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Hartman v. Sonic Restaurants, Inc.*, No. 18-CV-01057-EFM-TJJ, 2018 WL 4052152, at *9 (D. Kan. Aug. 24, 2018) (internal citation omitted). The Tenth Circuit has held that this exhaustion requirement serves "two principal purposes": first, to give notice of the alleged violation to the charged party; and second, to give the EEOC an opportunity to conciliate the claim. *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020). "To advance these purposes … a plaintiff's claim in court is generally

limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id*. (internal citation omitted).

Courts are to liberally construe the allegations in an EEOC charge; however, the charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 6997397, at *1 (10th Cir. Oct. 24, 2023). In this case, Plaintiff filed a charge of discrimination on October 22, 2024.[3] In this charge, he does not allege any retaliation by Defendants, and the facts he does plead "would not prompt an investigation of[] the allegedly unlawful conduct underlying [Plaintiff's] claims" for retaliation. *Id.* at *2. Specifically, Plaintiff failed to allege any adverse employment actions taken by the Defendant which could give rise to an inference of retaliation. Thus, Plaintiff does not state a valid claim for ADA retaliation and his motion to reopen this claim under Rule 59 or Rule 60 must be denied.

**B) Discrimination and Failure to Accommodate ADA Claims**

Although Plaintiff did not allege retaliation in his EEOC charge, he did attempt to charge discrimination and failure to accommodate. (*See* Doc. 13-1.) The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified

---

[3] Given that the court is evaluating the merits of Plaintiff's claims in a post judgment motion, the court can take judicial notice of all documents within the record. This is much the same logic as how consideration of these documents at the motion to dismiss phase would not convert the motion to dismiss into a motion for summary judgment because these documents are central to the Plaintiff's claim, they are referenced within Plaintiff's complaint, and there is no question as to their authenticity. *See, e.g.*, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

7

individual with a disability who is an applicant or employee, unless . . . the accommodation would impose an undue hardship." *Id.* at § 12112(b)(5)(A).

"The plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability." *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995). To bring a claim for ADA discrimination, Plaintiff must allege: (1) he is disabled within the meaning of the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) he was discriminated against because of his disability. *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). To demonstrate the third element of discrimination, a plaintiff generally must show that he has suffered an "adverse employment action because of the disability." *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001); *see also Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 748 (10th Cir. 1999) (stating that "the third element of the prima facie case ... requires the plaintiff to come forth with evidence showing that the adverse employment decision was because of his disability").

Defendant previously argued in its motion to dismiss that Plaintiff failed to demonstrate that he suffered an adverse employment action, and so he failed to state a claim regarding discrimination. (Doc. 13 at 10.) "An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal citation omitted). However, courts "will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Id*. As a result, "a plaintiff must show that the alleged adverse action caused more than *de minimis* harm to or a *de minimis* impact upon an employee's job

opportunities or status." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011). Moving to the facts of this case, Plaintiff's assignment to different work hours or Defendant's failure to maintain vehicles as alleged by Plaintiff does not rise to the level of discrimination, because this change had only a *de minimis* impact on Plaintiff's employment. Plaintiff's responsibilities and compensation remained the same, and the only thing that changed was his hours of employment. This is not an adverse employment action rising to the level of discrimination. *See, e.g.*, *Daniels v. United Parcel Serv., Inc.*, 797 F. Supp. 2d 1163, 1188 (D. Kan. 2011), *aff'd*, 701 F.3d 620 (10th Cir. 2012) (holding that changing an employee's working hours from floating shift to night dispatcher was not discrimination because her "job responsibilities did not meaningfully change"). As such Plaintiff's motion to reopen his ADA discrimination claim under Rule 59 or Rule 60 must be denied.

In addition to the ADA prohibiting discrimination, an employer can incur liability under the ADA for failing to accommodate an employee's disability. 42 U.S.C. § 12112(b)(5)(A). Under this Act, the employee must request a "plausibly reasonable accommodation." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017). A failure to accommodate claim is evaluated under a modified *McDonnell Douglas* burden-shifting framework. Under the first step of the modified framework, a plaintiff must demonstrate that (1) he is disabled; (2) he is otherwise qualified; and (3) he requested a plausibly reasonable accommodation. *Id*. at 1050. If the plaintiff makes a showing on all three elements, the burden "shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id*. (internal citation omitted). "However, before an employer's duty to provide reasonable accommodations—or even to participate in the "interactive process"—is triggered

under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011).

Here, Plaintiff alleges that he reached out to request accommodations from Defendant regarding the safety of his vehicle on March 2, 2024, and his mental disability on March 8, 2024, but he does not plead the exact accommodations he requested. (Doc. 1 at 11–12.) Instead, Plaintiff contends that he sent his medical records to Defendant, without specifying the exact accommodations he was seeking. (Doc. 1 at ¶ 30.) In fact, according to Defendant's letter to the EEOC in response to Plaintiff's charge of discrimination, Defendant argued:

> The medical records were titled "General Diagnostic Battery" and were not immediately clear as to what kinds of records they were and they did not appear to be recent, as the date of the evaluation on the form is December 2, 2021. Buried at the end of the records are some general suggestions regarding workplace assistance, but the records contained no explicit request to implement a reasonable accommodation.

(Doc 13-2 at 3.) Moreover, when Plaintiff did speak with Defendant's human resources representative, he was told to submit his reasonable accommodations and a medical certification form, which Plaintiff allegedly never did. (*Id.*) The ADA defines "reasonable accommodation" to "include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). "[T]he term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Punt*, 862 F.3d at 1051. The facts of this case show that Plaintiff did not properly make an adequate request for accommodation from Defendant. Therefore, his motion to reopen his ADA accommodation claim under Rule 59 or Rule 60 must be denied.

Insofar as Plaintiff attempts to plead that Defendant failed to engage in an interactive process with him regarding his alleged disability, the failure to engage in an interactive process does not provide an independent cause of action. "When an employee requests an accommodation for a qualifying disability, the Americans with Disabilities Act requires employers to participate in an 'interactive process' with the employee to determine a mutually suitable accommodation . . . . But the failure to engage in an interactive process is not independently actionable under the Act." *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1201 (10th Cir. 2023). *See also Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1207 n.29 (10th Cir. 2018) ("[O]ur case law is clear that an employee cannot maintain a failure to accommodate claim based solely on an employee's failure to engage in the interactive process.").

C) **Negligence and Gross Negligence Claims**

Plaintiff alleges two state law counts related to negligence. Specifically, he pleads a state tort negligence count and a gross negligence count. (Doc. 1 at 3–4,16–17.) Plaintiff pleads in his complaint that the court has supplemental jurisdiction to hear his state law negligence and gross negligence claims under 28 U.S.C. § 1367. It is true that a court may, in its discretion, exercise supplemental jurisdiction over a plaintiff's state law tort claims if they is sufficiently related to a pending claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(a). Here, Plaintiff asserted ADA claims over which this court had original jurisdiction under 28 U.S.C. § 1331. However, the court's exercise of supplemental jurisdiction is not mandatory, and a court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) if the court "has dismissed all claims over which it has original jurisdiction." As set out above, the court has denied Plaintiff's motions to reopen his ADA claims in this case, which were the only claims over which this court had original jurisdiction. Consequently, the court also declines to reopen any claims

under Rule 59 or Rule 60 over which it would have to exercise supplemental jurisdiction. *See Brown v. Unified Sch. Dist. No. 500, Kansas City, KS*, 368 F. Supp. 2d 1250, 1258–59 (D. Kan. 2005) (declining to exercise supplemental jurisdiction when other federal claims had been dismissed). Given that the court dismissed this matter without prejudice (Doc. 23), Plaintiff is free to pursue his state law negligence and gross negligence claims in a state court with proper jurisdiction.

**IV.   Conclusion**

Plaintiff's motion to reopen this case (Doc. 26, 28) and motion for relief from judgment (Doc. 29) are DENIED. The Clerk of court is directed to supplement the preliminary record of the appeal in this case as instructed by the Tenth Circuit. (Doc. 40.)

IT IS SO ORDERED. Dated this 20th day of October, 2025.

_s/ John W. Broomes_
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE
